UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| JASON WORCESTER,<br><br>  Plaintiff<br><br>v.<br><br>PAN AM RAILWAYS, INC. and<br>KENNETH H. PELLETIER,<br><br>  Defendants | Civil Action Docket No. _____<br><br>JURY TRIAL REQUESTED<br>INJUNCTIVE RELIEF SOUGHT |

## **COMPLAINT**

Plaintiff, by his attorneys, Drummond Woodsum & MacMahon and Flynn & Wietzke, PC, complains of the defendants and alleges:

### **THE PARTIES**

1. The plaintiff is a resident of the State of Maine, County of Cumberland and City of Portland.

2. The defendant PAN AM RAILWAYS, INC. ("PAN AM") is a railroad carrier providing railroad transportation, incorporated in the State of Delaware with a usual place of business in North Billerica, Massachusetts.

3. During all times herein mentioned, PAN AM was engaged in interstate commerce by providing railroad transportation among the states of Maine, New York, Vermont, Connecticut, New Hampshire and Massachusetts.

4. The defendant KENNETH H. PELLETIER ("PELLETIER") is a resident of the State of Maine, County of Somerset and Town of Fairfield. At all times relevant,

1

PELLETIER was and is an employee of PAN AM, and an Assistant Superintendant, with supervisory authority over plaintiff.

## JURISDICTION & VENUE

5. The plaintiff, Jason Worcester, brings this action against the defendant for violations of the Federal Rail Safety Act, 49 U.S.C. Section 20109 ("FRSA").

6. This Court has subject matter jurisdiction in this case pursuant to 49 U.S.C. Section 20109(d)(3).

7. Venue is proper in this District because a substantial part of the events or omissions giving rise to the claim occurred in this District, because PAN AM is subject to personal jurisdiction in this District, and because PELLETIER resides in this District.

## PROCEDURAL FACTS

8. On March 2, 2012, the plaintiff filed a FRSA Complaint with the Secretary of Labor's Region 1 OSHA Whistleblower Office. (Exhibit 1). That was within 180 days from the date the plaintiff became aware of the defendant Railroad's intent to take adverse or unfavorable personnel action against him.

9. The Region 1 OSHA Whistleblower Office commenced its investigation, and the plaintiff fully cooperated with OSHA's investigation. However, OSHA did not issue a final decision within 210 days after the filing of the FRSA Complaint. The delay was not due to any bad faith on the part of the plaintiff.

10. The plaintiff has a statutory right to bring an original action in a United States district court for a jury trial regarding the Railroad's violations of FRSA. 49 U.S.C. Section 20109(d)(3). On October 1, 2012, the plaintiff filed with the US Department of Labor a Notice of Intent to File Original Action. (Exhibit 2)

11. Pursuant to 49 U.S.C. 20109(d)(3), the plaintiff now is bringing this original action at law and equity for de novo review by the United States District Court for the District of Maine, which Court has jurisdiction over this FRSA action without regard to the amount in controversy.

## FACTS COMMON TO ALL CAUSES OF ACTION

12. At all times relevant, the plaintiff was employed by PAN AM as a Signal Foreman, and qualified as an employee within the meaning of 49 U.S.C. Section 20109.

13. On October 7, 2011, the plaintiff was working as a Signal Foreman with supervisorial responsibilities for several workers under his charge.

14. On October 7, 2011 PELLETIER requested that a Signal Trainee with less than three months of railroad experience participate in the clean-up of materials which plaintiff understood to be potentially hazardous.

15. On October 7, 2011 the Signal Trainee expressed concern over the safety of performing the work requested of him by PELLETIER.

16. On October 7, 2011 the plaintiff, in his role as Foreman to the Signal Trainee, questioned the safety of work being requested by PELLETIER of the Signal Trainee.

17. On October 7, 2011 the plaintiff visited the worksite where the Signal Trainee was requested to work by PELLETIER.

18. On October 7, 2011 the plaintiff spoke with an official from the State of Maine, Department of Environmental Protection about the nature and safety of the work being performed.

19. On October 7, 2011, before plaintiff could complete his conversation with the official from the State of Maine, PELLETIER ordered plaintiff to step away from the conversation with the official and to speak to PELLETIER only.

20. On October 7, 2011, after being ordered to stop speaking to the State of Maine official, plaintiff expressed to PELLETIER his concern for the safety of the Signal Trainee.

21. On October 7, 2011, PELLETIER ordered plaintiff to leave the work site after questioning the safety of the work being requested of the Signal Trainee.

22. On October 7, 2011, the plaintiff left the work site after being ordered to do so by PELLETIER.

23. On October 25, 2011 7, 2011 plaintiff was charged by PAN AM with alleged violations of company rules as follows:

> Specifically, on October 7, 2011, at the Field Road and East Elm Street work sites, you were insubordinate, quarrelsome, subjected the Carrier to criticism and adversely affected the performance of work being conducted by a B&B crew, two signal department employees, several supervisors, yourself and a DEP official. In addition, you absented yourself from duty at the Field Road work site without a supervisors permission.

24. The company rules plaintiff supposedly violated are:

   a. PGR-C (para.1) *"Employees must devote themselves exclusively to the Company's service while on duty."*

   b. PGR-C (para. 2) *"To remain in service, employees must refrain from conduct which adversely affects the performance of their duties, other employees or the public."*

   c. PGR-C (para.1) *"Employees must devote themselves exclusively to the Company's service while on duty."*

   d. PGR-C (para. 3) *"Any act of insubordination, hostility or willful disregard of the Company's interests will not be condoned and is sufficient cause for dismissal."*

4

    e. PGR-C (para. 4) *"Employees must conduct themselves in such a manner that their Company will not be subject to criticism or loss of good will."*

    f. PGR-L (para. 1) *"Employees who are dishonest, immoral, vicious, quarrelsome, and uncivil in deportment or who are careless of the safety to themselves or of others will not be retained in the service."*

    g. PGR-N (para. 2) *"Employees will not absent themselves from duty or engage a substitute to perform their work duties without permission from a supervisor."*

25. PELLETIER was the charging officer.

26. On November 16, 2011, plaintiff was ordered to attend a hearing where several witnesses testified, including PELLETIER.

27. On November 28, 2011 defendant PAN AM issued a letter finding plaintiff guilty of all charges listed and in the same letter terminated plaintiff.

## COUNT I
## Violation of FRSA against PAN AM

28. The plaintiff adopts by reference and realleges each and every allegation set forth in paragraphs 1 through 27 of this Complaint with the same force and effect as if set forth under this cause of action.

29. The plaintiff engaged in protected activity under the FRSA when he attempted assist in an investigation being performed by a State regulatory enforcement agency regarding conduct which he reasonably believed constituted a violation of a Federal law, rule or regulation relating to railroad safety.

30. The plaintiff engaged in protected activity under the FRSA when he provided information in an investigation being performed by a person with supervisory authority over him who had the authority to investigate, discovery or terminate the misconduct regarding conduct which he reasonably believed constituted a violation of a Federal law, rule or regulation relating to railroad safety.

5

31. The plaintiff engaged in protected activity under the FRSA when he refused to violate or assist in the violation of any Federal law, rule or regulation relating to railroad safety.

32. The plaintiff engaged in protected activity under the FRSA when he reported, in good faith, a hazardous safety condition.

33. The defendant PAN AM had knowledge of all the protected activities referenced above.

34. The defendant PAN AM took adverse or unfavorable actions against the plaintiff in whole or in part due to his protected activities when it charged plaintiff with company rule violations in connection therewith and terminated him.  In so doing, the defendant acted with reckless disregard for the law and with complete indifference to the plaintiff's rights under the FRSA.

35. As a result of defendant PAN AM's conduct, the plaintiff suffered various economic harms as well as emotional distress and mental anguish.

## COUNT II
## Violation of FRSA against PELLETIER

36. The plaintiff adopts by reference and realleges each and every allegation set forth in paragraphs 1 through 35 of this Complaint with the same force and effect as if set forth under this cause of action.

37. The plaintiff engaged in protected activity under the FRSA when he attempted assist in an investigation being performed by a State regulatory enforcement agency regarding conduct which he reasonably believed constituted a violation of a Federal law, rule or regulation relating to railroad safety.

38. The plaintiff engaged in protected activity under the FRSA when he provided information in an investigation being performed by a person with supervisory authority over him who had the authority to investigate, discovery or terminate the misconduct regarding conduct which he reasonably believed constituted a violation of a Federal law, rule or regulation relating to railroad safety.

39. The plaintiff engaged in protected activity under the FRSA when he refused to violate or assist in the violation of any Federal law, rule or regulation relating to railroad safety.

40. The plaintiff engaged in protected activity under the FRSA when he reported, in good faith, a hazardous safety condition.

41. The defendant PELLETIER had knowledge of all the protected activities referenced above.

42. The defendant PELLETIER took adverse or unfavorable actions against the plaintiff in whole or in part due to his protected activities when it charged plaintiff with company rule violations in connection therewith and terminated him. In so doing, the defendant acted with reckless disregard for the law and with complete indifference to the plaintiff's rights under the FRSA.

43. As a result of defendant PELLETIER's conduct, the plaintiff suffered various economic harms as well as emotional distress and mental anguish.

**WHEREFORE**, in order to encourage employees to freely report all injuries and safety concerns without fear of any retaliation, thereby ensuring the Federal Rail Administration has the necessary information to develop and administer an effective rail safety regulatory program that promotes safety in every area of our nation's railroad

operations, Plaintiff Jason Worcester demands a Judgment under the FRSA for all relief necessary to make him whole, including but not limited to:

(i) injunctive relief in the form of expungement of all references to disciplinary action related to the incident;

(ii) monetary relief in the form of damages against defendant PAN AM RAILWAYS, INC. on Count I in the sum of ONE MILLION DOLLARS ($1,000,000.00) representing, *intera alia*, lost benefits with interest; lost wages with interest; compensatory damages for medical expenses incurred due to defendant's conduct; compensatory damages for economic losses due to defendant's conduct; compensatory damages for mental anguish and emotional distress due to defendant's conduct; the statutory maximum of punitive damages; and special damages for all litigation costs including expert witness fees and attorney fees;

(iii) monetary relief in the form of damages against the defendant KENNETH H. PELLETIER on Count II in the sum of ONE MILLION DOLLARS ($1,000,000.00) representing, *inter alia*, lost benefits with interest; lost wages with interest; compensatory damages for medical expenses incurred due to defendant's conduct; compensatory damages for economic losses due to defendant's conduct; compensatory damages for mental anguish and emotional distress due to defendant's conduct; the statutory maximum of punitive damages; and special damages for all litigation costs including expert witness fees and attorney fees; and

(iv) such other relief as the Court may deem appropriate and necessary.

Dated: October 25, 2012
      Portland, Maine
      New York, New York

Respectfully submitted

*/s/ George Royle V*_____
George Royle V, Bar No. 4305
*Attorney for Plaintiff Jason Worcester*

DRUMMOND WOODSUM &
MACMAHON
84 Marginal Way, Suite 600
Portland, Maine 04101-2480
Tel: (207) 772-1941
Email: groyle@dwmlaw.com

-and-

*/s/ Marc T. Wietzke*_____
Marc T. Wietzke, *pro hac vice pending*
*Attorney for Plaintiff Jason Worcester*

FLYNN & WIETZKE, PC
1205 Franklin Avenue
Garden City, New York 11530
Tel: (516) 877-1234
Email: MWietzke@felaattorney.com