UNITED STATES DISTRICT COURT
DISTRICT OF MAINE
-------------------------------------------------------------X
JASON WORCESTER,

                Plaintiffs,              12 Civ. 0328 (NT)

    -against-                  AMENDED COMPLAINT

SPRINGFIELD TERMINAL RAILWAY
COMPANY,

                Defendant.
-------------------------------------------------------------X

PLAINTIFF DEMANDS TRIAL BY JURY

Plaintiff, by his attorneys, Flynn & Wietzke, PC and Drummond Woodsum,

complains of the defendant and alleges:

**THE PARTIES**

1.      The plaintiff is a resident of the State of Maine, County of Cumberland

and City of Portland.

2.      The defendant SPRINGFIELD TERMINAL RAILWAY COMPANY

("SPRINGFIELD") is a railroad carrier providing railroad transportation, incorporated

in the State of Vermont with a usual place of business in North Billerica, MA.

3.      During all times herein mentioned, "SPRINGFIELD" was engaged in

interstate commerce by providing railroad transportation among the states of Maine,

New York, Vermont, Connecticut, New Hampshire and Massachusetts.

4.      KENNETH H. PELLETIER ("PELLETIER") is a resident of the State of

Maine, County of Somerset and Town of Fairfield.  At all times relevant, PELLETIER

was and is an employee of "SPRINGFIELD", and an Assistant Superintendent, with

supervisory authority over plaintiff.

## JURISDICTION

5.     The plaintiff, Jason Worcester, brings this action against the defendant

for violations of the Federal Rail Safety Act, 49 U.S.C. Section 20109.

6.     This Court has subject matter jurisdiction in this case pursuant to the

Federal Railroad Safety Act, 49 U.S.C. Section 20109(d)(3) (FRSA).

7.     On March 2, 2012, the plaintiff filed a FRSA Complaint with the

Secretary of Labor's Region 1 OSHA Whistleblower Office. (Exhibit 1).  That was

within 180 days from the date the plaintiff became aware of the defendant Railroad's

intent to take adverse or unfavorable personnel action against him.

8.     The Region 1 OSHA Whistleblower Office commenced its investigation,

and the plaintiff fully cooperated with OSHA's investigation.  However, OSHA did not

issue a final decision within 210 days after the filing of the FRSA Complaint.  The delay

was not due to any bad faith on the part of the plaintiff.

9.     Pursuant to Section (d)(3) of the FRSA, the plaintiff has a statutory right

to bring an original action in a United States district court for a jury trial regarding the

Railroad's violations of the FRSA. 49 U.S.C. Section 20109(d)(3).  On October 1, 2012,

the plaintiff filed with the US Department of Labor a Notice of Intent to File Original

Action. (Exhibit 2)

10.     Pursuant to FRSA 49 U.S.C. 20109(d)(3), the plaintiff now is bringing

this original action at law and equity for de novo review by the United States District

Court of the District of Maine, which Court has jurisdiction over this FRSA action

without regard to the amount in controversy.

## FACTS COMMON TO ALL CAUSES OF ACTION

11.     At all times relevant, the plaintiff was employed by the defendant as a Signal Foreman, and qualified as an employee within the meaning of 49 U.S.C. Section 20109.

12.     On October 7, 2011, the plaintiff was working as a Signal Foreman with supervisorial responsibilities for several workers under his charge.

13.     On October 7, 2011 PELLETIER requested that a Signal Trainee with less than three months of railroad experience participate in the clean-up of materials which plaintiff understood to be potentially hazardous.

14.     On October 7, 2011 the Signal Trainee expressed concern over the safety of performing the work requested of him by PELLETIER.

15.     On October 7, 2011 the plaintiff, in his role as Foreman to the Signal Trainee questioned the safety of work being requested by PELLETIER of the Signal Trainee.

16.     On October 7, 2011 the plaintiff visited the worksite where the Signal Trainee was requested to work by PELLETIER.

17.     On October 7, 2011 the plaintiff spoke with an official from the State of Maine, Department of Environmental Protection about the nature and safety of the work being performed.

18.     On October 7, 2011, before plaintiff could complete his conversation with the official from the State of Maine, PELLETIER ordered plaintiff to step away from the conversation with the official and to speak to PELLETIER only.

19.     On October 7, 2011, after being ordered to stop speaking to the State of Maine official, plaintiff expressed to PELLETIER his concern for the safety of the Signal Trainee.

20.     On October 7, 2011, PELLETIER ordered plaintiff to leave the work site after questioning the safety of the work being requested of the Signal Trainee.

21.     On October 7, 2011, the plaintiff left the work site after being ordered to do so by PELLETIER.

22.     On October 25, 2011 7, 2011 plaintiff was charged by "SPRINGFIELD" with alleged violations of company rules as follows:

> Specifically, on October 7, 2011, at the Field Road and East Elm Street work sites, you were insubordinate, quarrelsome, subjected the Carrier to criticism and adversely affected the performance of work being conducted by a B&B crew, two signal department employees, several supervisors, yourself and a DEP official. In addition, you absented yourself from duty at the Field Road work site without a supervisors permission.

23.     The company rules plaintiff supposedly violated are:

   a.  PGR-C (para.1) *"Employees must devote themselves exclusively to the Company's service while on duty."*

   b.  PGR-C (para. 2) *"To remain in service, employees must refrain from conduct which adversely affects the performance of their duties, other employees or the public."*

   c.  PGR-C (para.1) *"Employees must devote themselves exclusively to the Company's service while on duty."*

   d.  PGR-C (para. 3) *"Any act of insubordination, hostility or willful disregard of the Company's interests will not be condoned and is sufficient cause for dismissal."*

   e.  PGR-C (para. 4) *"Employees must conduct themselves in such a manner that their Company will not be subject to criticism or loss of good will."*

   f.  PGR-L (para. 1) *"Employees who are dishonest, immoral, vicious, quarrelsome, and uncivil in deportment or who are careless of the safety to themselves or of others will not be retained in the service."*

g. PGR-N (para. 2) *"Employees will not absent themselves from duty or engage a substitute to perform their work duties without permission from a supervisor."*

24. PELLETIER was the charging officer.

25. On November 16, 2011, plaintiff was ordered to attend a hearing where several witnesses testified, including PELLETIER.

26. On November 28, 2011 defendant "SPRINGFIELD" issued a letter finding plaintiff guilty of all charges listed and in the same letter terminated plaintiff.

**AS AND FOR A FIRST CAUSE OF ACTION AGAINST
DEFENDANT SPRINGFIELD TERMINAL RAILWAY COMPANY**

27. The plaintiff adopts by reference and realleges each and every allegation set forth in paragraphs FIRST through TWENTY-SIXTH of this Complaint with the same force and effect as if set forth under this cause of action.

28. As a result of defendant "SPRINGFIELD'S" conduct, the plaintiff suffered various economic harms as well as emotional distress and mental anguish.

**AS AND FOR A SECOND CAUSE OF ACTION AGAINST
DEFENDANT SPRINGFIELD TERMINAL RAILWAY COMPANY**

29. The plaintiff adopts by reference and realleges each and every allegation set forth in paragraphs FIRST through TWENTY-EIGHTH of this Complaint with the same force and effect as if set forth under this cause of action.

30. The plaintiff engaged in protected activity under the FRSA when he attempted assist in an investigation being performed by a State regulatory enforcement agency regarding conduct which he reasonably believed constituted a violation of a Federal law, rule or regulation relating to railroad safety.

31. The plaintiff engaged in protected activity under the FRSA when he provided information in an investigation being performed by a person with supervisory

authority over him who had the authority to investigate, discovery or terminate the misconduct regarding conduct which he reasonably believed constituted a violation of a Federal law, rule or regulation relating to railroad safety.

32.     The plaintiff engaged in protected activity under the FRSA when he refused to violate or assist in the violation of any Federal law, rule or regulation relating to railroad safety.

33.     The plaintiff engaged in protected activity under the FRSA when he reported, in good faith, a hazardous safety condition.

34.     The defendant "SPRINGFIELD" had knowledge of all the protected activities referenced above.

35.     The defendant "SPRINGFIELD" took adverse or unfavorable actions against the plaintiff in whole or in part due to his protected activities when it charged plaintiff with company rule violations in connection therewith and terminated him.  In so doing, the defendant acted with reckless disregard for the law and with complete indifference to the plaintiff's rights under the FRSA.

WHEREFORE, in order to encourage employees to freely report all injuries and safety concerns without fear of any retaliation, thereby ensuring the Federal Rail Administration has the necessary information to develop and administer an effective rail safety regulatory program that promotes safety in every area of our nation's railroad operations, the plaintiff demands a Judgment under the FRSA for all relief necessary to make him whole, including but not limited to: expungement of all references to disciplinary action related to the incident; lost benefits with interest; lost wages with interest; compensatory damages for medical expenses incurred due to defendant's conduct; compensatory damages for economic losses due to defendant's conduct; compensatory damages for mental anguish and emotional distress

due to defendant's conduct; the statutory maximum of punitive damages; and special damages

for all litigation costs including expert witness fees and attorney fees.

WHEREFORE, plaintiff Jason Worcester demands judgment:

against defendant SPRINGFIELD TERMINAL RAILWAY COMPANY on the First Cause of

Action in the sum of ONE MILLION ($1,000,000.00) DOLLARS;

against the defendant SPRINGFIELD TERMINAL RAILWAY COMPANY on the Second

Cause of Action in the sum of ONE MILLION ($1,000,000.00) DOLLARS;

together with the costs and disbursements of this action.

> Flynn & Wietzke, PC
> Attorneys for Plaintiff
> 1205 Franklin Avenue
> Garden City, NY 11530
> (516) 877-1234
>
>
> By:__*/s/ Marc T. Wietzke*_____
>     MARC T. WIETZKE (MW1551)
> (MWietzke@felaattorney.com)
>
>
> Local Counsel for Plaintiff
> Drummond Woodsum
>
>
> By: __*/s/ George Royle V*_____
> **George Royle V**
> 84 Marginal Way, Suite 600
> Portland, Maine 04101-2480
> (207) 772-1941 ext. 563
> (Groyle@dwmlaw.com)

TO:     Glen L. Porter, Esq.
        Megan E. Randlett, Esq.
        Eaton Peabody
        80 Exchange Street,  PO Box 1210
        Bangor, ME 04402-1210