UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| JASON WORCESTER,<br><br>    Plaintiff,<br><br>v.<br><br>SPRINGFIELD TERMINAL<br>RAILWAY COMPANY,<br><br>    Defendant. | Case No. 2:12-cv-00328-NT |

**DEFENDANT SPRINGFIELD TERMINAL RAILWAY COMPANY'S MOTION
FOR SUMMARY JUDGMENT, WITH INCORPORATED MEMORANDUM OF LAW**

Defendant Springfield Terminal Railway Company ("Springfield Terminal"), pursuant to Rule 56 of the Federal Rules of Civil Procedure, respectfully moves this Court to grant its Motion for Summary Judgment on Counts I and II of Plaintiff Jason Worcester's ("Worcester") Amended Complaint. In support of its Motion, Springfield Terminal states as follows:

1. As more fully stated in the accompanying Memorandum, this Action arises out of Worcester's allegations that Springfield Terminal violated the Federal Railroad Safety Act ("FRSA"), 49 U.S.C. § 20101 *et seq*.

2. As detailed below, Worcester's claims cannot be substantiated through the facts and are not supported by the law.

3. In Worcester's Complaint, his FRSA claim was denominated as Count I. In Worcester's Amended Complaint, both the first and second causes of action encompass the same alleged violation of the FRSA originally set forth in Count I. As such, Defendant moves for summary judgment as to Worcester's first and second causes of action in the Amended Complaint.

WHEREFORE, Defendant Springfield Terminal Railway Company respectfully requests that this Court grant Summary Judgment in its favor on Counts I and II of Plaintiff's Amended Complaint.

## MEMORANDUM OF LAW

### INTRODUCTION

This case involves misconduct by the plaintiff which the plaintiff alleges constituted protected activity pursuant to the FRSA. The actions of the plaintiff throughout the incident of October 7, 2011 show that the plaintiff made a unilateral, unsupported and unauthorized determination that employees under his supervision in the signal department would not participate in certain emergency activities which were ordered by supervisors in the bridge and building department and confirmed by his own supervisors. The plaintiff's persistent refusal to accept the accurate representations of his and other department supervisors as to the appropriateness of the actions at issue amounted to insubordination. Furthermore, the plaintiff's actions in refusing to allow the use of equipment, and continued insertion of himself into the incident where his presence was not warranted or required, in fact created unacceptable safety risks. Plaintiff's actions were political and ideological; and they became personal. Statement of Material Facts (hereinafter "SMF") ¶¶ 17, 22, 28, 35, 46, 51, 58 & 59. Plaintiff's actions are not the type of conduct protected by the FRSA.

### LEGAL STANDARD

"Summary judgment is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S. Ct. 2548, 2555 (1986). Thus, summary judgment is appropriate if the pleadings, the discovery and disclosure of materials on file, and any affidavits show that there is no genuine

issue of material fact and the movant is, therefore, entitled to judgment as a matter of law. *Saccucci Auto Gr. v. Am. Honda Motor Co.*, 617 F.3d 14, 20 (1st Cir. 2010); *Thompson v. Miles,* No. 1:10-cv-000234-NT, 2011 WL 7639708, *7 (D. Me. Dec. 30, 2011) ("Once a party's properly documented motion has engaged the gears of Rule 56, the party to whom the motion is directed can shut down the machinery only by showing that a trial worthy issue exists.") For issues where the movant does not have the burden of proof at trial, the movant can succeed on summary judgment by showing that there is an absence of evidence to support the non-moving party's case. *OneBeacon Am. Ins. Co. v. Commercial Union Assur. Co. of Canada*, 684 F.3d 237, 242 (1st Cir. 2012).

To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511 (1986). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986). In other words, the "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252; *see also, Lopera v. Town of Coventry*, 640 F.3d 388, 403 (1st Cir. 2011) ("To survive summary judgment, the non-moving party must make more than conclusory allegations, improbable influences, or unsupported speculation.")

## **ARGUMENT**

### **THE PLAINTIFF IS UNABLE TO MEET HIS BURDEN PURSUANT TO THE FRSA**

The purpose of the FRSA is to promote safety in railroad operations. 49 U.S.C. § 20101. The FRSA was amended in 2007 to include anti-retaliation provisions. Pursuant to 49 U.S.C. § 20109, a railroad carrier may not "discharge, demote, suspend, reprimand, or in any other way

3

discriminate against an employee if such discrimination is due, in whole or in part, to the employee's lawful, good faith act done . . ." in pursuit of a protected activity as specifically enumerated by the statute. See 49 U.S.C. § 20109(a), (b) & (c).

It is clear from the statutory language of the FRSA that as a threshold matter the plaintiff must make a *prima facie* showing that he engaged in protected activity as defined therein.[1]

## A. THE PLAINTIFF DID NOT ENGAGE IN A PROTECTED ACTIVITY

In the Amended Complaint, plaintiff alleges that he engaged in four specific protected activities on October 7, 2011. Plaintiff first contends that he engaged in protected activity when he "attempted to assist in an investigation being performed by a State regulatory enforcement agency regarding conduct which he reasonably believes constituted a violation of a Federal law, rule or regulation relating to railroad safety." Amended Complaint ¶ 30. Plaintiff also contends that he engaged in protected activity when he "provided information in an investigation being performed by a person with supervisory authority over him who had the authority to investigate, discover or terminate the misconduct which he reasonably believed constituted a violation of a Federal law, rule or regulation relating to railroad safety." Amended Complaint ¶ 31. Third, the plaintiff asserts that he was protected when he "refused to violate or assist in the violation of any Federal law, rule or regulation relating to railroad safety." Amended Complaint ¶ 32. Finally, the plaintiff contends that he engaged in protected activity when he "reported in good faith, a hazardous safety condition." Amended Complaint ¶ 33. The defendant will address each of these alleged protected activities individually below; and the defendant submits that the plaintiff wholly fails to show that he was engaged in protected activity on October 7, 2011.

---

[1] *See Grimes v. BNSF Ry. Co.*, 1:12CV137-DAS, 2013 WL 3005557 at *3 (N.D. Miss. May 6, 2013)(court held that regardless of the legal standard the court chose to utilize for the burden shifting framework, the plaintiff must first show he was engaged in a protected activity).

4

1. **The plaintiff did not engage in protected activity by attempting in good faith to assist in an investigation being performed by a State regulatory enforcement agency regarding conduct which he reasonably believed constituted a violation of a Federal law, rule or regulation relating to railroad safety.**

The plaintiff alleges that on October 7, 2011 he engaged in a protected activity when he attempted to assist in an investigation being performed by the Maine Department of Environmental Protection (Maine "DEP") regarding conduct which he reasonably believed constituted a violation of a Federal law, rule or regulation relating to railroad safety. *See* 49 U.S.C. § 20109 (a)(1)(A). There are numerous reasons why this claim fails.

In order to make out a *prima facie* case of protected activity based on this alleged activity, the plaintiff bears the burden of proving that he had both a good faith and reasonable belief that the actions he took were protected pursuant to the statute. This same burden has been repeatedly evaluated by courts in Title VII cases. Courts have held that plaintiff's burden contains both subjective and objective components. *Little v. United Technologies*, 103 F.3d 956, 960 (11th Cir. 1997); *see also Velez v. Janssen Ortho LLC*, 389 F.Supp.2d 253, 261 (D.P.R. 2005). That is, the plaintiff must not only show that he subjectively (in good faith) believed that his activity was protected, but also that his belief was objectively reasonable based on all of the facts and circumstances. *Little*, 103 F.3d at 960. Thus, it is not enough for the plaintiff to allege that his belief was honest—the facts must also show that his belief was objectively reasonable. *Id*. The plaintiff is unable to meet this burden.

To begin, the plaintiff fails to specifically identify the Federal law, rule or regulation which he believed was being violated by the defendant. Plaintiff appears to generally assert that he spoke to the Maine DEP official about "the nature and safety of the work being performed." Amended Complaint ¶ 17. The statute, however, is very specific, and requires a showing that the employee reasonably believes there to be a violation of a Federal law, rule or regulation relating

5

to railroad safety. Plaintiff identifies no Federal law, rule or regulation relating to railroad safety that he in good faith believed was being violated.

Plaintiff's claim fails for additional reasons. Plaintiff alleges that he was providing information to the Maine DEP representative to assist her with her investigation. Amended Complaint ¶ 17. There was, however, no investigation taking place on October 7, 2011. SMF ¶¶ 5, 6, 8. Moreover, plaintiff did not provide information to Ms. Hemenway; rather, he was asking her for information. SMF ¶¶ 39, 40. This is simply not the type of situation the FRSA is designed to address.

While it is true that Mr. Pelletier interrupted the plaintiff's conversation with Ms. Hemenway, the plaintiff was not prohibited or prevented from assisting in Ms. Hemenway's "investigation" into conduct which he believed to constitute a violation of Federal law. There was no ongoing investigation taking place. Ms. Hemenway was informed by the defendant on October 6, 2011 that there had been a spill of hydraulic fluid, and she was on site on October 7, 2011 to oversee the cleanup effort, not to conduct an investigation into the spill. Ms. Hemenway had been on site for hours by the time that the plaintiff arrived; and Mr. Butland had been assisting in the cleanup without incident under Mr. Pelletier's, Mr. Gessman's and Ms. Hemenway's supervision. The plaintiff had been told repeatedly that the spill was not hazardous before he arrived at the site. It is therefore unfounded for the plaintiff to allege that he in good faith attempted to assist Ms. Hemenway in her "investigation".

Because the plaintiff does not meet his burden of proving both a subjective and objective belief that he was engaged in protected activity when he approached Maine DEP representative Ann Hemenway on October 7, 2011, his claim must fail.

**2. The plaintiff did not engage in protected activity by providing in good faith information in an investigation being performed by a person with supervisory authority over him who had the authority to investigate, discover or terminate the misconduct which he reasonably believed constituted a violation of a Federal law, rule or regulation relating to railroad safety.**

Again, the plaintiff fails to specifically identify the Federal law, rule or regulation which he believed was being violated by the defendant. Plaintiff appears to assert that he engaged in protected activity by expressing to Mr. Pelletier his concern for the safety of Mr. Butland. Amended Complaint ¶ 19. The type of protected activity alleged by the plaintiff, however, requires that a person with supervisory authority be in the act of conducting an investigation, and the plaintiff must supply information to the supervisor during the course of that investigation. Here, there was no investigation—rather, a spill cleanup was being overseen by two Springfield Terminal supervisors, as well as a representative of Maine DEP. SMF ¶¶ 6, 7, 8. Even in the event that the court determines that no investigation was required, the plaintiff was not reporting information as required by the statute. After the plaintiff was told for the first time by Mr. Gessman that the spill was not hazardous, he had no basis upon which to objectively believe that he needed to report further. SMF ¶ 18. Notwithstanding the fact that the plaintiff's actions prior to arriving at the Elm Street spill site were insubordinate, his decision to drive to the site and approach the DEP representative knowing that Mr. Pelletier and Mr. Gessman were at the site, and without speaking with them first, was certainly insubordinate misconduct.

Because plaintiff's actions on October 7, 2011 were not performed for the purpose of providing information in an investigation and his actions were not reasonable, his actions did not constitute protected activity.

### 3. The plaintiff did not engage in protected activity by refusing in good faith to violate or assist in the violation of any Federal law, rule or regulation relating to railroad safety.

None of the activities of the plaintiff on October 7, 2011 constitute a refusal on the part of the plaintiff to perform any act. Indeed, plaintiff was not directed to go to the site nor was his presence required. He was an interloper on a political errand, that is all.

Moreover, the plaintiff was informed repeatedly prior to driving to the Elm Street location that the spill was not hazardous. SMF ¶¶ 18, 31. Plaintiff was also aware that there were two Springfield Terminal supervisors, Mr. Pelletier and Mr. Gessman, at the Elm street location overseeing the cleanup. SMF ¶¶ 18, 31. Because plaintiff was made aware that the spill was not hazardous and that Pelletier and Gessman were on site <u>before</u> going to Elm Street, there is no reasonable objective basis upon which he can allege that he believed his presence was required at the cleanup site.

Finally, the plaintiff appears to suggest that he was concerned for Mr. Butland's safety due to his lack of experience operating the small excavator. Mr. Butland himself, however, noted that he had prior experience with operation of the excavator while on the plaintiff's signal crew and under plaintiff's supervision. SMF ¶ 61. In addition, the excavator was small, and was leased by the defendant from an equipment rental company—it did not require a license or specialized training. SMF ¶ 62, 63, 64.

For all of the above reasons, plaintiff did not refuse in good faith to violate or assist in the violation of any Federal law, rule or regulation, and therefore his activities were not protected.

### 4. The plaintiff did not engage in protected activity by reporting in good faith a hazardous safety condition.

The plaintiff claims that he engaged in a protected activity by reporting in good faith a hazardous safety condition. *See* 49 U.S.C. § 20109 (b)(1)(A). As outlined above, there was no hazardous safety condition on October 7, 2011 and the plaintiff was informed of this fact during his initial conversation with Mr. Gessman. SMF ¶ 18. At that early point the plaintiff had no independent basis upon which to conclude that the spill was hazardous. Notwithstanding this fact, the plaintiff proceeded to text Mr. Butland when he arrived at Elm Street—telling him not to participate in the cleanup. SMF ¶ 28. In addition, despite being informed that the spill was not hazardous, the plaintiff took it upon himself to leave his assigned location at Field Road, and drive approximately fifteen minutes to Elm Street. SMF ¶ 34. The plaintiff then proceeded to bypass the two supervisors who had previously informed him that the spill was not hazardous, and instead approach an individual identified as a DEP representative. SMF ¶ 36. In the process of bypassing two supervisors and walking directly onto the track, the plaintiff failed to obtain his required job site briefing, and broke defendant's well-established safety rules in the process. SMF ¶ 37. The plaintiff did not express any safety concerns to the DEP representative. SMF ¶¶ 39, 40.

Further supporting the fact that the plaintiff had no good faith belief that a hazardous safety condition existed was the fact that the plaintiff was provided a copy of the Hazard Communications Policy and was provided training on the policy prior to October 7, 2011. SMF ¶ 55. The plaintiff does not allege that Mr. Pelletier violated the Hazard Communication Policy. SMF ¶ 56. In addition, the plaintiff had never seen a copy of the MSDS for hydraulic fluid until after November 16, 2011, and did not know of any hazardous properties associated with hydraulic fluid. SMF ¶ 67. Although the plaintiff asserted a "good faith challenge" to Mr.

9

Pelletier when he was at the Elm Street site, there was no basis for this challenge—as the plaintiff admitted during his deposition testimony. SMF ¶¶ 69, 70.

## **CONCLUSION**

As set forth above, plaintiff cannot make a *prima facie* showing that that on October 7, 2011, he engaged in a protected activity within the meaning of 49 U.S.C. § 20101 *et seq*. Accordingly, Defendant's Motion for Summary Judgment should be granted in its entirety.

Wherefore, Springfield Terminal Railway Company, respectfully requests that this Court enter Summary Judgment in its favor and against Plaintiff Jason Worcester on Counts I and II of Plaintiff's Amended Complaint.

DATED this 24th day of July, 2013.

                                          Respectfully Submitted,

                                          SPRINGFIELD TERMINAL
                                          RAILWAY COMPANY,

                                          By    */s/ Glen L. Porter*
                                                  Glen L. Porter, Esq.
                                                 Eaton Peabody
                                                 80 Exchange Street
                                                 P.O. Box 1210
                                                 Bangor, ME 04402-1210
                                                 (207) 947-0111


                                          By    */s/ Megan E. Randlett*
                                                  Megan E. Randlett, Esq.
                                                 Eaton Peabody
                                                 80 Exchange Street
                                                 P.O. Box 1210
                                                 Bangor, ME 04402-1210
                                                 (207) 947-0111

**CERTIFICATE OF SERVICE**

I, Glen L. Porter, Esq., hereby certify that on July 24, 2013, I electronically filed the foregoing Motion for Summary Judgment with Incorporated Memorandum of Law with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Mark T. Wietzke, Esq.
Flynn & Wietzke, P.C.
1205 Franklin Ave., Suite 370
Garden City, NY  11530

George Royle, V, Esq.
Drummond Woodsum & MacMahon
84 Marginal Way
Portland, ME  04101-2480

*/s/ Glen L. Porter*
Glen L. Porter